## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-0614-B |
| | § | |
| FRED K. WHISENHUNT et al., | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the order of reference dated October 9, 2013, before the Court for recommendation are the plaintiff's *Motion for Summary Judgment Against John Frederick Voelker*, filed May 6, 2013 (doc. 30), and *Defendant John Frederick Volker's Motion for Summary Judgment*, filed June 4, 2013 (doc. 33). Based on the relevant filings, evidence, and applicable law, the plaintiff's motion for partial summary judgment should be **DENIED**, the defendant's cross-motion for partial summary judgment should be **GRANTED**, and the plaintiff's claim under 26 U.S.C. § 6324(a)(2) should be **DISMISSED with prejudice.**

### I. BACKGROUND

The United States of America (Plaintiff) sues John Frederick Voelker (Defendant), a beneficiary of an estate, for unpaid estate tax penalties against the estate. (Compl. (doc. 1).)[1] Dr. Jacob Lindy Kay (Decedent) died testate on August 16, 2002. ((P. App. Mot. Sum. Ju. (doc. 30-3) at 9.) Pursuant to Decedent's will, Defendant received $596,506.50 from his estate, including $70,000.00 in cash and $526,506.50 in the form of a distribution from an Individual Retirement Account (IRA). (docs. 30-3 at 3; 36-1 at 52.) On May 27, 2003, the Internal Revenue Service (IRS)

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

extended the estate's tax return filing deadline from May 27, 2003 to November 16, 2003.  (doc. 30-4 at 2.)  The estate filed the required Form 706 estate tax return and paid $380,516.68 in estate taxes and accrued interest on July 17, 2007.  (*Id.*)  On September 10, 2007, the IRS assessed two penalties against the estate's tax return: (1) a "late filing" penalty of $85,616.25 and (2) a "failure to pay tax" penalty of $95,129.17.  (*Id.*)  The IRS issued a statutory notice of balance due to the estate's executor on the same day.  (*Id.* at 4.)  The following month, the IRS issued a notice of intent to levy. (*Id.*)

On April 4, 2008, the estate's beneficiaries executed a "family settlement and distribution agreement."  (D. App. Mot. Sum. Ju. (doc. 36-1) at 39–50.)  Pursuant to the family agreement, assets totaling $190,000.00 were to be distributed among the beneficiaries on or before April 11, 2008. (*Id.* at 40–41.)  In addition, $101,379.00 were paid to Strasburger and Price, LLP, the executor's legal counsel (the law firm), to be held in escrow for the purpose of covering any additional tax liabilities.  (*Id.* at 41.)  In October 2008 and October 2009, the IRS notified the executor that $241,883.20 in tax penalties and interest were past due.  (doc. 30-4 at 4.)  When the family agreement terminated on July 1, 2010, the outstanding penalties remained unpaid, and interest continued to accrue.  (docs. 30-4 at 3; 36-1 at 41.)

## A.   The Interpleader (First) Action

On July 14, 2010, the law firm filed an interpleader action in federal court to determine "the proper beneficiary" of the funds held in escrow and tendered a total of $96,931.24 to the court's registry.  *Strasburger & Price LLP v. Lane Gorman Trubitt, PLLC*, No. 3:10-CV-1373-L, 2011 WL 3647915, at *1 (N.D. Tex. Aug. 17, 2011).  The law firm named the federal government (i.e., Plaintiff ), the estate, and several beneficiaries as defendants.  *See id.*  Defendant was not one of the

beneficiaries that was listed or served as a named defendant in that suit, however. *See id.* at *1–4. Plaintiff later filed an unopposed motion for summary judgment against the estate, claiming to have "priority" to the interpleaded funds by virtue of a tax lien that attached to the estate's assets under 26 U.S.C. § 6321 after it failed to pay the past due tax penalties despite having received notice from the IRS. (doc. 36 at 30–31.)

Before ruling on Plaintiff's motion, the court issued an order stating that the record did "not reflect that any defendant, other than the government [i.e., Plaintiff], ha[d] actually been served." *See Strasburger*, No. 3:10-CV-1373-L, Order (doc. 14) at 1 (N.D. Tex. July 29, 2011). In the order, the court directed the law firm to "explain why no service ha[d] been effected on all defendants" and asked Plaintiff "to provide authority that allow[ed] summary judgment to be issued against defendants who ha[d] not been served." *Id.* at 1–2. In its response to the order, Plaintiff clarified that "the only other defendant with a potential claim to the interpleaded funds" was the decedent's estate. (doc. 36 -1 at 30.) It pointed to the law firm's evidence showing that the estate had been "properly served" because the executor—its legal representative under Texas law—had been served, and that only two estate beneficiaries remained unserved (including Defendant). (*Id.*) The court accepted Plaintiff's argument that it did "not seek judgment against any unserved party," and held that "summary judgment in [its] favor against the decedent's estate [was] appropriate." *Strasburger*, 2011 WL 3647915, at *3–4. Plaintiff was awarded "the $96,931.42 contained in the court's registry, in addition to any accrued interest." *Id.* at *4.

## B.    Second Action

Between September 2007 and October 2011, the IRS issued several notices of balance due and intent to levy. (doc. 30-4 at 3–4.) As of February 29, 2012, $178,406.41 in tax penalties and

interest remained unpaid.  (doc. 30-7) at 1.)   On that date, Plaintiff filed this action against Defendant, the estate executor, and three other estate beneficiaries.[2] (doc. 1.)  It sought (1) judgment against the estate for delinquent estate taxes; (2) foreclosure of a federal tax lien under 26 U.S.C. § 6324(a)(1); (3) judgment against the estate executor "personally for fiduciary liability" under 31 U.S.C. § 3713 and the Texas Probate Code §§ 320, 322, and 322B; (4) judgment under 26 U.S.C. § 6324(a)(2) against the beneficiaries that received distributions of a certain IRA; and (5) judgment against all of the beneficiaries under § 37 of the Texas Probate Code for a lien placed on all transferred property from the "gross estate."  (doc. 1 at 4–8.)

Defendant filed an answer to the complaint on April 27, 2012, asserting four affirmative defenses: (1) limitations; (2) laches; (3) res judicata; and (4) waiver.  (*Id.* at 5.)  He also disputed his liability for the estate's tax obligations pursuant to a "covenant" in the family agreement that purportedly imposed all such liabilities on the estate's executor.  (D. Ans. (doc. 5).)

On May 6, 2013, Plaintiff moved for summary judgment against Defendant on the liability claim under 26 U.S.C. § 6324(a)(2).[3]  (docs. 30 at 1; 30-1 at 3–4.)  Defendant filed a cross-motion for summary judgment a month later, asserting his affirmative defense of res judicata.  (doc. 33.) With timely-filed responses and replies (docs. 35; 37–38), the motions are now ripe for recommendation.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no

---

[2]   The executor was Fred K. Whisenhunt, and the three other beneficiaries were Elizabeth K. Spain, Joyce K. Whisenhunt, and Blake Clifton.  (doc. 1 at 2.)

[3]  Elizabeth K. Spain, Joyce K. Whisenhunt, and Blake Clifton were dismissed from the action pursuant to voluntary and stipulated dismissals.  (*See* docs. 21–23.)  Fred K. Whisenhunt, the executor, did not answer or otherwise defend in the action, and on October 10, 2012, Plaintiff obtained a default judgment against him and the estate.  (*See* docs. 10; 12; 18.)

genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "[T]he substantive law [determines] which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.* The movant must inform the court of the basis of its motion and identify the evidence that shows there are no genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324.  To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor.  *Anderson*, 477 U.S. at 249.[4]

All of the evidence must be viewed in a light most favorable to the motion's opponent. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Nevertheless, neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and must "articulate the precise manner in which that evidence supports [the] claim[s]."  *Ragas v. Tenn. Gas Pipeline, Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th

---

[4] "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'"  *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

Cir. 1994)).   Summary judgment in favor of the movant is proper if, after adequate time for

discovery, the motion's opponent fails to establish the existence of an element essential to her case

and as to which she will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322–23.

### III.  PLAINTIFF'S MOTION

Plaintiff moves for summary judgment on its claim under 26 U.S.C. § 6324(a)(2) and on

Defendant's affirmative defense of limitations.  (docs. 30 at 1; 30-1 at 3–5.)[5]

### A.      Defendant's Personal Liability under 26 U.S.C.  § 6324(a)(2)

When an estate fails to timely pay its tax obligations,[6] § 6324(a) provides the Federal

government with two statutory remedies for collecting the unpaid tax.  The first is a "special estate

tax lien [that] automatically attaches to all property in the decedent's estate upon the decedent's

death."  *United States v. Blakeman*, 997 F.2d 1084, 1088 (5th Cir. 1992).  This special tax lien lasts

ten years.  26 U.S.C.A. § 6324(a)(1) (West 2010).  In addition, § 6324(a)(2) imposes personal

liability on any beneficiary or transferee of property included in the decedent's "gross estate under

sections 2034 to 2042" to the extent of the value, at the time of decedent's death, of the property

received.  *Id.* § 6324(a)(2).  An IRA, which is an "annuity," is among the types of assets that are

included in the decedent's "gross estate."  *See id.* § 2039(a); *Smith ex rel. Estate of Smith v. United

States*, 391 F.3d 621, 626 (5th Cir. 2004).  Consequently, a beneficiary or transferee who receives

a distribution from an IRA is personally liable under § 6324(a)(2) for the estate's unpaid tax

---

[5]  Plaintiff does not move for summary judgment on its pending claims against Defendant for "foreclosure of [a] federal tax lien" under § 6324(a)(1) and enforcement of a lien on the transferred property pursuant to Tex. Prop. Code § 37.  (*See* docs. 1 at 5–7; 30; 30-1.)

[6]  For example, chapter 11 of the Internal Revenue Code imposes a tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States."  26 U.S.C.A. § 2001 (West 2009).  This estate tax is due nine months after the decedent's death, unless the estate obtains an extension.  *Id.* §§ 6075(a), 6161(a)(1).

obligations up to the value of his interest in the IRA. *United States v. Mangiardi*, No. 13-80256-CIV, 2013 WL 3810658, at *1–2 (S.D. Fla. July 22, 2013); *Kulhanek*, 755 F. Supp. 2d at 660–62; *see also* 26 U.S.C.A. §§ 2039, 6324(a)(2).

To meet its initial summary judgment burden on its claim against Defendant under § 6324(a)(2), Plaintiff proffers a transaction statement prepared by the IRS showing that as of the date this action was filed, the estate's outstanding tax obligations totaled $178,406.41.[7] (doc. 30-7 at 1.) It also proffers copies of the estate's Form 706 tax return, showing that Defendant received a distribution of $596,506.50 from the estate. (doc. 30-3 at 3.) Plaintiff points to Defendant's answer acknowledging that he received such distribution. (doc. 5 at 2, ¶ 14.) Lastly, Plaintiff asserts that it is "undisputed that [Defendant] received an IRA interest worth $520,000" and points to Defendant's sworn affidavit, filed as an appendix to his summary judgment motion, where he states that he received an IRA distribution from the decedent's estate, and that its value was $526,506.50 on the date he received it. (docs. 30-1 at 3; 36-1 at 51–52.) Based on all of this evidence, Plaintiff has met its summary judgment burden to show that Defendant is personally liable under § 6324(a)(2) for the estate's unpaid tax obligations up to $526,506.50, the value of his IRA distribution at the time of decedent's death. The burden now shifts to Defendant to direct the Court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *See Celotex*, 477 U.S. at 324.

In response, Defendant argues that the IRA's value is not $520,000.00 "because he is required to pay income taxes on all sums withdrawn from that fund for his benefit." (D. Resp. (doc.

---

[7] Plaintiff explains that pursuant to 26 U.S.C. § 6665, the term "tax" for purposes of § 6324(a)(2) includes penalties, such as the late filing and late payment penalties the IRS assessed against the estate in September 2007. (doc. 30-1 at 3.) Defendant does not dispute this contention.

35) at 5.)  He essentially argues that the IRA's value at the time of the decedent's death should be discounted to account for the income tax he will pay on it, and that "[t]here is no summary judgment evidence" showing what the resulting value will be.  (Id.)[8]

Pursuant to Treasury regulations, "the value of every item of property includible in a decedent's gross estate . . . is its fair market value at the time of the decedent's death."  26 C.F.R. § 20.2031–1(b).  Fair market value is defined as "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Id.  Notably, "[t]he willing buyer and the willing seller are hypothetical persons, rather than specific individuals or entities, and the individual characteristics of these hypothetical persons are not necessarily the same as the individual characteristics of the actual seller or the actual buyer."  Estate of Kahn v. C.I.R., 125 T.C. 227, 231 (2005) (citations omitted).  "Correctly applying the willing buyer-willing seller test demonstrates that a hypothetical buyer would not consider the income tax liability to a beneficiary on the income in respect of a decedent since he is not the beneficiary and thus would not be paying the income tax." Smith, 391 F.3d at 628.  The Fifth Circuit has therefore held that "the potential federal income tax liability to the beneficiaries" is not considered "when valuing [] Retirement Accounts."  Id. at 629.

Based on Fifth Circuit precedent and the relevant regulations, Defendant cannot defeat

---

[8]  Because retirement accounts are generally "funded with tax-deferred compensation," they are "classified under § 691(a) . . . as 'income in respect of a decedent.'"  Smith, 391 F.3d at 626–27 (citing 26 U.S.C. § 691(a)(1); 26 C.F.R. § 1.691(a)–1)).  This means that inherited interests in an IRA "must be included in the gross income" "of the decedent's beneficiaries" "for the taxable year [they are] received." Id. (citing 26 U.S.C. § 691(a)(1)(B)).  This income tax paid by the beneficiaries is in addition to the tax the decedent's estate must pay under § 2001.  "To compensate (at least partially) for this potentially double taxation," the Internal Revenue Code "grants the recipient of income in respect of a decedent an income tax deduction equal to the amount of federal estate tax attributable to that asset." Id. (citing 26 U.S.C. § 691(c) (parenthesis in original).

8

Plaintiff's motion with his argument regarding the method for determining the IRA's value as a matter of law. *See id.* Accordingly, Defendant has failed to meet his summary judgment burden of creating a triable fact issue regarding the value of his IRA interest, and the extent of his personal liability under § 6324(a)(2).

**B.**     <u>Statute of Limitations</u>

Plaintiff also moves for summary judgment on Defendant's affirmative defense of limitations, arguing that the limitations period for collecting the estate's unpaid tax penalties is open. (doc. 30-1 at 4.)

All taxes imposed by Title 26 of the Internal Revenue Code are subject to the general limitations provisions found in §§ 6501 and 6502. Pursuant to § 6501(a), the IRS "must assess a deficiency against a taxpayer within '3 years after the return was filed.'"[9] *United States v. Home Concrete & Supply, LLC*, 132 S. Ct. 1836, 1839 (2012) (citing 26 U.S.C. § 6501(a) (2000 ed.)). Within 60 days after making the assessment, the IRS must "give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof." *Id.* § 6303(1). If the tax obligation remains unpaid after notice and demand, "such tax may be collected by levy or by a proceeding in court, . . . within 10 years after the assessment of the tax . . . ." *Id.* § 6502(a)(1).[10]

To determine the limitations period applicable to § 6324(a)(2), courts have looked to "the generally applicable statutes of limitations created under § 6501 and § 6502," rather than the ten-

---

[9] Upon review of a taxpayer's tax return, the IRS "is authorized and required" to assess other payments that may be due, "including interest, additional amounts, additions to the tax, and assessable penalties." 26 U.S.C.A. § 6201(a)(1).

[10] In addition, a "general tax lien arises under 26 U.S.C. § 6321 when the taxpayer fails to pay a federal tax liability, after assessment and notice are given and demand upon the taxpayer is made." *Blakeman*, 997 F.2d at 1088. In the interpleader action, Plaintiff argued that it had priority to the interpleaded funds pursuant to a tax lien that attached to the estate's assets under § 6321 when it failed to pay the tax penalties after receiving notice. (doc. 36 at 31.)

year special tax lien provision of § 6324(a)(1). *See, e.g.*, *Mangiardi*, 2013 WL 3810658, at *5; *Kulhanek*, 755 F. Supp. 2d at 660 (listing cases). First, courts have found that there is a "clear distinction" between the special tax lien created by § 6324(a)(1) and a transferee's personal liability imposed by § 6324(a)(2). *Kulbanek*, 755 F. Supp. 2d at 662–63; *see also United States v. Botefuhr*, 309 F.3d 1263, 1277 (10th Cir. 2002) ("[C]ourts . . . have routinely analyzed the personal liability prong of § 6324 independent from and without reference to the lien provision."). Ultimately, they have concluded that since a transferee's liability under § 6324 is derivative from or dependent on the estate's liability, if an action against the estate is timely pursuant to §§ 6501 and 6502, then the action is also timely against the transferee. *Botefuhr*, 309 F.3d at 1277 (listing cases).

To refute Defendant's limitations defense, Plaintiff presents evidence that the estate filed its Form 706 tax return on July 17, 2007, over four years after the extended filing deadline expired. (doc. 30-4 at 2.) Plaintiff's evidence also shows that the IRS timely assessed $180,745.72 in late filing and late payment penalties against the estate's tax return on September 10, 2007. (*Id.*); *see also* 26 U.S.C. § 6501(a). The ten-year statute of limitations for collecting those tax penalties began to run on September 10, 2007. *See* 26 U.S.C. § 6502(a). Plaintiff filed suit on February 29, 2012, well before the limitations expired. (*See* doc. 1.) With this evidence, Plaintiff has shown that its complaint was timely.

The burden now shifts to Defendant to create a genuine material fact issue for trial as to the timeliness of Plaintiff's action under §6324(a)(2). Defendant does not dispute the sequence of events presented by Plaintiff with his own evidence. He does not address this affirmative defense in his summary judgment motion or supporting brief. (*See* docs. 5, 33–34.) Because Defendant has failed to dispute Plaintiff's properly supported sequence of events with his own evidence, he has

failed to create a genuine issue of material fact as to the timeliness of Plaintiff's action, and the Court should find the action to be timely.[11]

## IV.  DEFENDANT'S CROSS-MOTION

Defendant moves for summary judgment on Plaintiff's claim under 26 U.S.C. § 6324(a)(2), asserting that the claim is barred by res judicata.[12] (docs. 33 and 34 at 3–6.)

"The term 'res judicata' is often used to describe two discrete preclusive doctrines: res judicata and collateral estoppel." *United States v. Davenport*, 484 F.3d 321, 325 (5th Cir. 2007) (citation omitted); *see also Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) ("The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'").  "True res judicata" or "claim preclusion . . . bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) (citation omitted).  This doctrine has four elements: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Davenport*, 484 F.3d at 326.  As with all affirmative defenses, the burden of proving claim preclusion "rests on the party

---

[11]  Plaintiff also moves for summary judgment on the Defendant's affirmative defense of res judicata. (doc. 31-1 at 4–7.) This aspect of Plaintiff's motion is addressed in connection with Defendant's cross-motion for summary judgment. Finally, Plaintiff addresses a purported argument by Defendant that his liability should be determined by state law. (doc. 30-1 at 7–10.)  Defendant makes no such argument, however, in either his answer to the complaint, his motion for summary judgment, or his response to Plaintiff's motion for summary judgment.  (*See* docs. 5; 33–35.)  Accordingly, this argument is not discussed.

[12]  Defendant's motion only addresses Plaintiff's "transferee" claim under 26 U.S.C. § 6324(a)(2).  (*See e.g.*, docs. 34 at 6 ("Plaintiff [could] have sought to assess liability against the Defendant . . . by reason of [his] status as transferee[]" in the first action.); 35 at 6 ("The question presented . . . is whether or not the Defendant is liable under 26 U.S.C., Section 6324(a)(2) for the estate tax liabilities of the Decedent.").)  Accordingly, his motion is construed as seeking summary judgment on this claim only, and not on Plaintiff's claims against him for "foreclosure of [a] federal tax lien" under § 6324(a)(1) and enforcement of a lien on the transferred property pursuant to Tex. Prop. Code § 37.

claiming the benefit of the doctrine." *Patterson v. Dean Morris, L.L.P.*, No. CIV.A. 08-5014, 2011 WL 1791235, at *6 (E.D. La. May 6, 2011) (citation omitted); *accord Taylor*, 553 U.S. at 907.

## A.   <u>Identical Parties or Privity with Identical Parties</u>

Here, Defendant was not listed or served as a party in the law firm's interpleader action. *See Strasburger*, 2011 WL 3647915, at *1–4. He claims, however, that this element is met because he "was clearly in privity with the parties" to that proceeding. (doc. 34 at 4 n. 1.)

Privity is in essence a "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266–67 (5th Cir. 1990). The Fifth Circuit "has held that privity exists in just three, narrowly-defined circumstances: (1) where the non-party is the successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Id.*

The Fifth Circuit has addressed the issue of privity in the estate tax context. In *Davenport*, the decedent's estate contested the government's assessment of a gift tax deficiency in tax court, and the tax court held in the government's favor. *Davenport*, 484 F.3d at 324. After the estate failed to pay the taxes owed, the government brought an action in district court "to reduce to judgment the estate's liability and the donees' [personal] liability as transferees pursuant to []§ 6324(b)."[13] *Id.* Although the donees were not parties to the tax court proceeding, the Fifth Circuit held that they

---

[13] Similarly to § 6324(a)(2), § 6324(b) imposes personal liability on a transferee of a gift:

> [U]nless the gift tax imposed [on an estate] by chapter 12 is sooner paid in full or becomes unenforceable by reason of lapse of time, such tax shall be a lien upon all gifts made during the period for which the return was filed, for 10 years from the date the gifts are made. If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the extent of the value of such gift.

26 U.S.C.A. § 6324(b).

were in privity with the donor estate for res judicata purposes, emphasizing that "the tax liability of the donor and donee are inseparable." *Id.* at 326–27 (citing *Baptiste v. Comm'r*, 29 F.3d 1533, 1539 (11th Cir. 1994) (holding that for purposes of res judicata and § 6324(a)(2) liability, "a transferee is in privity with his transferor"); *First Nat'l Bank of Chicago v. Comm'r*, 112 F.2d 260, 262 (7th Cir. 1940) (same with respect to a different section of the Internal Revenue Code)). *Davenport* involved subsection (b) of § 6324. Given the similar language and purpose of the two subsections, however, its holding is instructive in actions brought under subsection (a). *See id.*; *see also Baptiste*, 29 F.3d at 1539.

To meet his initial summary judgment burden, Defendant proffers copies of the parties' pleadings, the court's orders, and other relevant filings in the law firm's interpleader action. (docs. 36 and 36-1.) This evidence shows that the estate was one of the named and properly served defendants in that suit. *See, e.g.*, *Strasburger*, 2011 WL 3647915, at *3; (Mem. Op. and Order (doc. 36 -1) at 32–37). Because Defendant (the transferee) is in privity with the estate (the transferor) for purposes of res judicata (*see Davenport*, 484 F.3d at 327), he has met his initial summary judgment burden to show that this element is satisfied. Plaintiff does not dispute Defendant's evidence or position regarding this element.

## B.   Court with Competent Jurisdiction

With respect to the second element, the evidence proffered by Defendant shows that the law firm filed suit in federal court based on diversity jurisdiction under 28 U.S.C. § 1335.[14] (Compl. in

---

[14] Section 1335 provides, in relevant part:

> The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any . . . firm . . . having in [] its custody or possession money or property of the value of $500 or more . . . [i]f two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property.

28 U.S.C.A. § 1335(a)–(b) (West 2005).

Interpleader (doc. 36-1) at 3–9.)  Because the parties in this case do not dispute that the court had

jurisdiction over that interpleader action, Defendant has discharged his summary judgment burden

of showing that the second element is satisfied.  *See Wang v. Prudential Fin. Corp.*, No. 3:07-CV-

1574-P, 2008 WL 8922646, at *2 (N.D. Tex. Jan. 9, 2008) ("Plaintiff does not dispute that the

judgment in the First Suit was rendered by a court of competent jurisdiction. Therefore, the Court

has no problem concluding that the . . . second element[] of the res judicata test [is] satisfied."); *see

also Brupbacher v. Raneri*, No. CIV.A.3:00-CV-1292-D, 2001 WL 36181492, at *4 n. 6 (N.D. Tex.

June 28, 2001) (Fitzwater, C.J.) (to same effect).

## C.   <u>Final Judgment on the Merits</u>

As to the third element, the court in the interpleader suit granted Plaintiff' motion for

summary judgment, holding that Plaintiff had priority to the funds held in escrow by virtue of the

statutory lien that automatically attached to the estate's assets under § 6321 after it failed to pay its

tax liabilities.  *Id.* at *3–4.  Summary judgment is a final judgment on the merits.  *See Vines v. Univ.

of Louisiana at Monroe*, 398 F.3d 700, 705 (5th Cir. 2005) ("A judgment that determines the merits

in whole or in part is a final judgment.") (citation omitted); *Davis v. Gusman*, No. CIVA 09-7195,

2010 WL 1727825, at *13 (E.D. La. Apr. 13, 2010), *rec. adopted*, 2010 WL 1727821 (E.D. La. Apr.

28, 2010) (listing "cases in which claim preclusion has been upheld by the Fifth Circuit involv[ing]

summary judgment").  Accordingly, Defendant has satisfied his burden of bringing forth evidence

sufficient to show that the third element of res judicata is met.  As with the first two elements,

Plaintiff does not contest Defendant's evidence or position on this basis.

## D.   <u>Same Claims</u>

"To determine whether two suits involve the same claim or cause of action," the Fifth Circuit

"has adopted the transactional test of the Restatement (Second) of Judgments, § 24." *Petro-Hunt,*

*L.L.C. v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004). Under this test, the "inquiry focuses

on whether the two cases under consideration are based on 'the same nucleus of operative facts.'"

*Davenport*, 484 F.3d at 326 (citations omitted). "[I]t is the nucleus of operative facts, rather than

the type of relief requested, substantive theories advanced, or types of rights asserted, that defines

the claim." *Id.* In applying this test, the court must determine not the facts that were actually

litigated, "as would be proper under the doctrine of collateral estoppel," but rather the "nucleus of

operative facts that were or *could have been raised* in the previous proceeding." *Id.* at 327, 329

(emphasis added). Identifying the nucleus of operative facts involves a "pragmatic" approach,

"giving weight to such considerations as whether the facts are related in time, space, origin, or

motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms

to the parties' expectations." *Test Masters*, 428 F.3d at 571 (citing Restatement (Second) of

Judgments, § 24). The "preclusive effect of [the] prior judgment extends to all rights the original

plaintiff had 'with respect to all or any part of the transaction, or series of connected transactions,

out of which the action arose.'" *Petro-Hunt*, 365 F.3d at 395–96 (citation omitted).

In the interpleader action, Plaintiff argued that it had priority to the funds held in escrow by

virtue of the lien that attached to the estate's assets under § 6321 after it failed to pay the tax

penalties despite having received notice of those penalties. (doc. 36 at 29–32.) The "nucleus of

operative facts" was the sequence of events that resulted in the estate's liability for the penalties: (1)

Decedent died on August 16, 2002, so the deadline for filing his estate's tax return under § 2001 of

Chapter 11 was May 16, 2003, nine months after his death; (2) the IRS extended the estate's filing

deadline to November 16, 2003; (3) the estate filed its Form 706 tax return on July 17, 2007, nearly

four years after the filing deadline expired; (4) the IRS timely assessed late filing and late payment penalties totaling $180,745.42 on September 10, 2007; (5) between September 2007 and October 2011, the IRS issued various notices of balance due and intent to levy to the estate's executor; and (6) as of the date the law firm filed the interpleader action, the estate had not paid the assessed penalties.  (docs. 30-3 at 9; 30-4 at 2; 36 at 27–28.)

In this action, Plaintiff asserted five claims and moved for summary judgment on its claim against Defendant for personal liability under § 6324(a)(2).  (docs. 1 at 4–8; 30 at 1; 30-1 at 1–4.) The "nucleus of operative facts" establishing Defendant's personal liability under § 6324(a)(2) for the estate's unpaid tax obligations are: (1) Decedent died on August 16, 2002, and the IRS extended the estate's deadline for filing its tax return to November 16, 2003; (2) the estate untimely filed its Form 706 tax return on July 17, 2007; (3) the IRS properly assessed late filing and late payment penalties totaling $180,745.42 on September 10, 2007; (4) as of the date Plaintiff filed this action, accounting for the $96,931.42 judgment Plaintiff obtained in the interpleader suit and the interest accruing on the outstanding balance, $178,406.41 remained outstanding; and (5) Defendant received a $526,506.60 distribution from an IRA, which qualifies as part of the decedent's "gross estate" for purposes of determining his § 6324(a)(2) liability.  (docs. 30-3 at 9; 30-4 at 2; 36 at 27–28, 32–38; 36-1 at 52.)

Plaintiff's claims in both actions arise from the same transaction or series of connected transactions: (1) the estate's failure to timely pay its Chapter 11 taxes; (2) the assessment by the IRS of late filing and late payment penalties on the estate's tax return; and (3) the estate's failure to pay those penalties after receiving proper notice.  Plaintiff now specifically alleges for the first in this suit that: (1) Defendant received a distribution from an IRA and (2) the value of his IRA distribution

16

is at least $520,000, which is sufficient to satisfy the estate's outstanding tax obligations. (docs. 30-1 at 3–4; 37 at 5.) In the first action, Plaintiff sought judgment only against the estate under § 6321, and it now seeks judgment only against Defendant under § 6324(a)(2), but the "nucleus of operative facts" for both claims is the same: the estate's failure to timely file its Chapter 11 tax return and timely pay its taxes, the assessment of penalties by the IRS for those failures, and the estate's subsequent failure to pay those penalties. Considered together, Plaintiff's § 6321 claim against the estate in the interpleader action and its current § 6324(a)(2) claim against Defendant are related in "motivation" and form a "convenient trial unit" because Plaintiff's purpose in both actions is to satisfy the estate's unpaid tax penalties.

As held by the Fifth Circuit, in "federal tax litigation[,] one's total income tax liability for each taxable year constitutes a single, unified cause of action, regardless of the variety of contested issues and points that may bear on the final computation." *Finley v. United States*, 612 F.2d 166, 170 (5th Cir. 1980). Consequently, "if a claim of liability or non-liability relating to a particular tax year is litigated, a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year." *Puckett v. C.I.R.*, 213 F.3d 636, 2000 WL 554440, at *3 (5th Cir. 2000) (per curiam) (citation omitted) (emphasis deleted). This is the case even when the taxpayer is a decedent's estate. *See Hunt's Estate v. United States*, 309 F.2d 146, 148–49 (5th Cir. 1962) (citing with approval the "substantial authority for [the] proposition" that "estate tax liability is a single liability"); *Baumer v. United States*, No, CIV. A. 96-3552, 1997 WL 537993, at * (E.D. La. Aug. 28, 1997) ("[T]he tax liability of an estate constitutes a single cause of action, litigation of which bars, under the doctrine of res judicata, further litigation of issues that were or could have been raised in the first dispute.") (citing *Finley*, 612 F.2d at 170; *Hunt*, 309 F.2d at 147–49). Lastly,

as previously noted, the Fifth Circuit has also held that the tax liabilities of the transferor and transferee for purposes § 6324(b) "are inseparable." *See Davenport*, 484 F.3d at 327.  In light of the similar language and purpose of subsections (a) and (b), this holding may reasonably be applied to both provisions.

Here, the IRS assessed the tax penalties at one point in time—September 10, 2007, relating to the estate's Chapter 11 tax liability for one taxable year—2003.  (doc. 30-4 at 4.)  The estate's (the transferor) and Defendant's (the transferee) liabilities for the initial 2003 Chapter 11 estate taxes and the subsequent 2007 tax penalties were "inseparable."  *See Davenport*, 484 F.3d at 327.  Plaintiff was therefore required to pursue its § 6321 claim against the estate and its § 6324(a)(2) claim against Defendant in the same proceeding.  *See Finley*, 612 F.2d at 170; *Hunt*, 309 F.2d at 147–49.  As Plaintiff's pleadings and the court's opinion in the first suit show, Plaintiff opted to pursue only its § 6321claim against the estate in that suit.  *See Strasburger*, 2011 WL 3647915, at *3–4; (*see also* docs. 36 at 25–34; 36-1 at 30.)   Based on his proffered evidence and the relevant case law, Defendant has met his summary judgment burden of showing that the fourth element of res judicata is also present.

Nevertheless, even when "the four-part test has been satisfied," "[u]nder the law of this circuit, . . . res judicata does not apply unless a party could and should have brought its claims in the former proceeding."  *Puckett*, 2000 WL 554440, at *3 (citation omitted).  That is, "[r]es judicata precludes a later claim [only] if [the] party was aware of the claim at the time of the prior proceeding."  *Id.*  To show that Plaintiff was aware of its § 6324(a)(2) claim against him in the interpleader suit, Defendant points to Plaintiff's filings in that proceeding.  He argues that Plaintiff sought judgment for the total amount due solely against the estate, even though it was aware that the

estate beneficiaries "were available or were subject to the jurisdiction of the Court as to any liability that they may have as transferees of Decedent's estate for the alleged assessed penalty." (docs. 35 at 7; 36; 36-1.)  In its motion for summary judgment in that proceeding, Plaintiff alleged that the estate owed "over $250,000 of penalties assessed for failing to timely pay its federal estate tax and timely file its federal estate tax return." (doc. 36 at 27.)  Plaintiff attached to its motion a copy of the estate's Form 706 tax return, which contained an exhibit listing "all beneficiaries receiving $5,000 or more," *including Defendant*, as well as the amount that each received. (*Id.* at 41.)  The estate's tax return also indicated that the "gross estate" included a roll-over IRA at "Frost National Bank" worth $1,016,813.00. (doc. 30-3 at 30, item 3.) Plaintiff acknowledged that the estate beneficiaries were "interested parties" (*see* doc. 36 at 17–24), but sought judgment only against the estate. *See Strasburger*, 2011 WL 3647915, at *3–4; (docs. 36 at 25–34; 36-1 at 30).  Plaintiff now seeks summary judgment solely against Defendant on grounds that he "is the largest beneficiary" of the gross estate. (doc. 30 at 1.)  Notably, Defendant's status as the estate's "largest beneficiary" was reflected in the estate's Form 706 tax return, which was among Plaintiff's evidence in the first action. (doc. 36 at 41.)  Although Plaintiff could have moved for summary judgment against him on that basis in the first suit, it opted not to do so.  It did not even join him as a party, for that matter. In conclusion, Defendant has met his summary judgment burden of showing that Plaintiff was aware of its § 6324(a)(2) claim against him in the first action, and therefore could and should have brought the claim in that action.

Plaintiff does not dispute any of this evidence.  Rather, it argues that res judicata is inapplicable because the issues and facts that were actually adjudicated in the interpleader suit are different from the those that are being litigated here. (*See* docs. 30-1 at 5–7; 37 at 3–6.)  Unlike

19

collateral estoppel, however, true res judicata or claim preclusion focuses on the nucleus of operative facts that were or *could have been* litigated in the first action, not those that were actually litigated. *See Davenport*, 484 F.3d at 327–29.  As noted, Plaintiff could have litigated Defendant's personal liability under § 6324(a)(2) in the interpleader suit because the evidence it presented to the court in that case showed that the gross estate included an IRA worth $1,016,813.00, that Defendant was the largest beneficiary of the gross estate, and that his total distribution was $596,506.50.  Accordingly, Plaintiff has failed to meet its summary judgment burden of creating a triable fact issue regarding the elements and applicability of Defendant's res judicata affirmative defense.  This defense therefore bars Plaintiff's claim against Defendant under § 6324(a)(2), and the claim should be dismissed with prejudice.

## V.  RECOMMENDATION

Plaintiff's motion for partial summary judgment should be **DENIED**, Defendant's cross-motion for partial summary judgment should be **GRANTED**, and Plaintiff's claim against Defendant under 26 U.S.C. § 6324(a)(2) should be **DISMISSED with prejudice**.  Remaining for trial are Plaintiff's claims against Defendant for "foreclosure of federal tax liens" under § 6324(a)(1) and enforcement of a lien on the transferred property pursuant to Tex. Prop. Code § 37.  (*See* doc. 1 at 5–7.)

**SO RECOMMENDED** on this 28th day of February, 2014.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

21